[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes to this court as a limited contested dissolution of marriage case. The wife, whose maiden name was Rosalyn Robinson married Paul Hiller on May 20, 1979. She is the plaintiff and has resided in the state of Connecticut for more than one year before the date of the complaint. There are no minor children issue of the marriage. The wife was born October 4, 1935 and she is 57 years old. The husband was born October 12, 1933 and he is 59 years old. Neither of the parties has ever been on state welfare. The wife is seeking restoration of her maiden name which is granted. CT Page 608
This is a third marriage for the husband and a second marriage for the wife. The husband is a high school graduate and the wife has four years of college.
At the time of the marriage, the husband had a car and a boat which was a 25 foot Chris Craft with an equity of approximately $12,500. His car was a 1976 or 1977 Chrysler without a loan. He had perhaps some bank accounts but they had no money in them. He had some limited amount of furniture. He also was paying child support at the time of the marriage. He had a debt of approximately $6,000 with the Merchants Bank. The testimony indicated he had a net worth at the time of the marriage of zero.
The wife at the time of the marriage owned premises known as 33 Glen Avenue, Norwalk, Ct. The wife's house at 33 Glen Avenue was an English Tudor on half an acre, with three bedrooms and two baths. The husband estimated the value at that time as $100,000 with a $25,000 mortgage. She drove a Cadillac. She had $12,000 in the bank. Her house was furnished. She was working for Palotay Real Estate.
For a substantial period of time the husband's brother, who is presently aged 72, lived with them. He apparently is mentally impaired and needs some physical and emotional support. The husband is the conservator for his brother. During the time that the brother George lived with the husband and wife, the wife washed the brother's clothes, did all of his cleaning and laundry, took him to the doctor, took him shopping and helped him with his checking account, and generally helped the brother.
The wife testified that during the course of the marriage after the husband's automobile accident, he was hospitalized eleven times in a two year period between approximately 1983 and 1985. She cared for him as he returned from the hospital each time.
The wife believed that the husband's relationship with another woman broke down the marriage. The husband indicated in his testimony that the marriage had broken down prior to his involvement with another woman. It is clear that there had been a gradual erosion of this marriage and it is clear to this court that the marriage presently has broken down irretrievably. The court does not allocate to either of the parties fault as to the cause of the breakdown of the marriage.
The court has been asked to unravel the parties' financial CT Page 609 problems. Basically there are four pieces of real estate known as:
1) 35 Geneva Road
2) 84 Main Street
3) 365 Westport Avenue and
4) North Carolina Condo
1. 35 Geneva Road
The 35 Geneva Road property is shown on the husband's affidavit with a value of $290,000 and on the wife's financial affidavit with a value of $300,000. The husband shows an equity in the house as $135,000. The wife's shows it as $124,000 after the deduction for the mortgage as shown on the property. Geneva Road was purchased in approximately July 31, 1986. There was a $350,000 purchase price with a $100,000 mortgage. Cash went into the purchaser
The wife sold the 33 Glen Avenue property for $315,000. Apparently a swing loan (a loan used to bridge the purchase of one property until the other property was sold) was placed on the Glen Road property and paid off when it was sold. In sum and substance, when the house was sold at Glen Avenue for $315,000, a first mortgage of $50,000 was paid off, a brokerage's commission of $15,000 was paid, leaving $250,000, some part of which was the down payment on the premises at 35 Geneva Road.
This current mortgage on 35 Geneva Road is now $160,000 despite the fact that when it was first purchased it was $100,000. This is due to a refinance in December of 1991.
The additional monies from the refinance were used as a loan to Hiller Real Estate. That loan to Hiller was in the approximate sum of $85,000 which came about since the first mortgage of $100,000 had been paid down to approximately $80,000.
2. 365 Westport Avenue
The property known as 365 Westport Avenue, Norwalk, Connecticut, has a fair market value of $950,000. It is owned one-third by George Hiller, the husband's brother; one-third by Paul Hiller and one-third by Paul and Rosalyn Hiller. The property was CT Page 610 inherited by Paul Hiller from his mother in 1987. Paul, his brother and sister each received a one-third interest. In 1988, Paul and Rosalyn Hiller jointly bought out the sister's share by taking out a mortgage on the property in the amount of $500,000. Effectively, the husband, as a result of that purchase, has three-sixths of the property. One-sixth is owned by Rosalyn Hiller and two-sixths are owned by George Hiller. Although the property interest of the husband's two-sixths was acquired by inheritance, the additional two-sixths obtained from the husband's sister was paid for by the parties jointly, placing a mortgage on the property.
3. 84 Main Street
The property known as 84 Main Street was stipulated to by the parties to have an equity of $42,000 being the husband and wife's one-half interest. It is an investment property and is rented. It meets expenses by the rents received. It is a residential property in a retail district.
4. North Carolina Condo
The North Carolina condo was purchased for $76,500. The husband presently shows the fair market value at $50,000. The wife shows no value but shows an equity of about $10,000 on her affidavit and the husband shows an equity of $11,375.
The income of the parties has never been substantial. The 1991 tax return shows that their company made approximately $6,203. The 1990 tax return shows that in 1990 the corporation lost $18,732. Some salaries and wages are shown but in both cases less than $17,000. It is clear to this court that most of the parties' income came from real estate investments rather than from earnings from the business.
The wife shows in her financial affidavit approximately $750 per month gross income. The husband shows gross monthly income of approximately $1,230. All of the real estate deals are either break even or are losing money including the 365 Westport Avenue property and the 84 Main Street, Norwalk, Connecticut, property.
At the pendente lite hearing the judge ordered the husband to pay the mortgage, the taxes, insurance, electric and other amounts. The total monthly payments for the house were approximately $2,962.30. The husband was also ordered to pay to the wife $165 CT Page 611 per week alimony. The husband has failed to make the weekly $165 per week payments to the wife for May, June, July, August, September, October, November and December, except for $660. In addition, he made a one time payment of $500. There is presently an arrearage of $4,310 on that amount as of December 22. The wife has been to court five times arising out of the husband's failure to make payments.
The husband's testimony as to his earnings are at best inconsistent. The wife has testified that he has an ability to pick up the phone and get payments from certain of his customers. On rebuttal he indicated that some commissions are due in the future from Precision Tune-Up, where there was a $21,000 commission, and some money will be due in 1993. Also, there was a lease on a restaurant that indicates some monies are due in 1993.
The court has listened to the witnesses and reviewed all of the exhibits in the case and the claims for relief. In addition, the court has taken into consideration all the criteria set forth in 46b-81, the assignment of property and transfer of title statute, 46b-82, the alimony statute, and 46b-62, the attorney's fees statute. The court has taken into consideration the "aid to the court" concerning the parties disputed testimony about improvements and payments of expenses to the house at 35 Geneva Road and the property at 33 Glen Avenue. The court as a result of the foregoing makes the following orders:
1) The husband is to transfer to the wife his interest in the house located at 35 Geneva Road, Norwalk, Connecticut. The court finds that she brought a house to the marriage and it is reasonable, having consideration for all the relevant statutory criteria, that she have a house as she leaves the marriage. The wife shall keep the husband harmless from all mortgages, claims and other expenses of the property.
2) The wife has a one-sixth interest in the premises at 365 Westport Avenue, Norwalk, Connecticut, and the court leaves her with that sixth interest and leaves the husband with his three-sixths interest.
3) The wife shall transfer her interest in the condominium in North Carolina to the husband. The husband shall pay her on the sale of those premises the sum of $5,000. If the premises are not sold within two years from the date of this decision then he shall pay her $5,000 in two years. CT Page 612
4) The wife shall transfer to the husband her interest in the jointly owned property located at 84 Main Street, Norwalk, Connecticut.
5) The wife shall transfer her interest in the boat to the husband.
6) The husband shall pay the alimony arrearage within 90 days from the date of this decision. The court finds that the arrearage as of December 21 is $4,310. If that arrearage has increased, that amount shall be added on to it. If there is any dispute as to the arrearage, the matter is referred to the Family Relations office for review and mediation and then back to the court if the parties cannot agree.
7) The husband shall pay to the wife as long as they are both alive and until her remarriage or cohabitation under the statute but not later than 5 years from the date of the decision as rehabilitative alimony the sum of $750 per month as alimony.
8) The court finds that a great deal of counsel fees incurred in this case by the wife's attorney were caused by the actions and non-payments made by the husband. Accordingly, the court orders the husband to contribute to the wife's counsel fees the sum of $4,000. Said sum shall be paid when the 365 Westport Avenue property is sold.
If it is not sooner sold the amount is due within one year. The court finds that these attorney's fees are necessary to be awarded so that the remaining financial orders of the court will not be undermined.
9) The husband is to provide medical insurance for the wife if available through his company, pursuant to COBRA. The wife shall be responsible for the cost.
10) Each party is to retain the automobile he or she drives.
11) Each party is to pay their own debts except as otherwise provided herein.
12) The parties are to be equally responsible for the payment of the cost of the appraisals performed by Albert H. Sher totalling $750. CT Page 613
13) Each of the parties shall be responsible for the mortgages or other encumbrances on the properties that have been ordered transferred to them under this court order.
14) The husband is to carry his $10,000 life insurance policy for the benefit of the wife as long as he is paying her alimony.
15) Each of the parties is to retain their own bank accounts.
16) The husband is responsible for payment for all of the debts the court ordered he be responsible for on April 13, 1992, which include the mortgage, taxes, etc. That order is effective up to the date of this decision and is terminated thereafter.
17) The husband shall keep his personal injury claim free and clear of the wife.
18) The wife shall transfer her ownership on the Hiller Real Estate Associates to the husband. The court by this transfer does not absolve either party from any corporate liability incurred prior to April 30, 1991 for which they may be held personally accountable. The husband is ordered to hold the wife harmless from any liability in connection with the operation of this business now known as Hiller Real Estate Associates.
19) The wife shall retain all of her jewelry, furs and IRA accounts and all other personal possessions in her custody except for those items which are of particular use to the husband. By agreement of the parties this court has referred those items of personal property not specifically awarded in this memorandum of decision to Family Relations for binding mediation. The parties are ordered to first attempt to resolve it between themselves.
20) All of the claims for relief made by the parties not expressly addressed herein have been rejected by the court.
KARAZIN, J.